# SUPREME COURT

## JOHN WARREN agt. JOHN McDIARMID.

The collection of wharfage under the act of 1860, April 10, chapter 416 laws of 1860, can only be made in the manner pointed out in the 217th section of the act of April 9th, 1863, which is by a warrant to distrain the goods and chattels found on board of the vessel, for wharfage accrued under section 1 of the said act of 1860, and on the pier or bulkhead, for that accrued under section 3 of same act.

It is not proper to bring an action to enforce such a lien. A receiver will be denied in such an action, even though a case therefor, as well as of wharfage and lien, is made out by the plaintiff.

*Kings Special Term, December,* 1867.

*Before Hon.* JOHN A. LOTT, *Justice.*

THE plaintiff moved for a receiver for a large number of

hackmatack knees, lying on his dock, situated at the foot of Quay street, Greenpoint, Long Island. The motion was founded on a complaint in which it was averred:

1. That he was lessee and wharfinger of a certain wharf set forth in the complaint, and has been such for six months past.

2. That while he was such, the defendant was the owner of about 1,000 hackmatack knees, which were on the plaintiff's wharf from Nov. 1, 1865, up to February 1, 1866. On or about February 1, 1866, 449 of said hackmatack knees were removed, leaving 551 of the same lot remaining thereon until May 18, 1866. For the first lot and time plaintiff claims a lien on the hackmatack knees to the amount of $955 80-100, and for the second period on the remaining portion of said knees the sum of $353 50-100, being for both times and quantities, $1,309 30-100.

3. On the 18th May, 1866, the plaintiff rendered a bill to the defendant and demanded the pay for the wharfage, which demand the defendant refused to comply with, denying all liability therefor.

4. The plaintiff further shows that no portion of the said knees were merchandise, delivered on a wharf for transportation through the canals, nor landed for storage purposes by the defendant, as owner or occupant of a warehouse immediately in front of and adjoining the said bulkhead, &c., &c., but the same were merchandise owned or in the possession of the defendant, landed by him from vessels consigned to, moored at and unladen on said bulkhead.

5. That the plaintiff is advised it is necessary for him to enforce his lien by action, and he brings this action for that purpose. That the defendant claims that the plaintiff has no lien on the said knees, but is removing them and gradually disposing of them to third parties. The defendant is a man of but little, if any, pecuniary responsibility, and threatens, &c., &c.

Prays injunction and receiver.

## D. McMahon, *for plaintiff, in support of the motion.*

*First.* The plaintiff has a lien for the wharfage or dockage of the said knees. Laws of 1860, page 416, act of April 10, 1860, section 3, provides: "It shall be lawful for the owner or lessee of any bulkhead, pier or basin, in the port of New York, to charge and receive the sum of five cents per ton on all *goods, wares* or *merchandise remaining* on the *bulkhead* or *pier* owned or leased by him, for every day after the expiration of *forty-eight hours* from the time such goods, wares or merchandise shall have been left or deposited on such pier or bulkhead, and *shall be a lien thereon until paid,* excepting merchandise and other property delivered on a wharf for transportation by canal boats through the canals owned by this state, and also excepting such merchandise as may be landed on a bulkhead for storage purposes, by the owner or occupant of a warehouse immediately in front of and adjoining the bulkhead on which such merchandise shall be landed, which may be permitted to remain thereon eight days without being subject to the charge aforesaid. Nothing contained in this section shall be so construed as to conflict with the eighth section of the act to establish regulations for the port of New York, passsed April 16, 1857, and amended April 16, 1858."

It will be seen that this section expressly gives a lien on the merchandise in question.

*Second.* The proper remedy to enforce a lien on the state of facts herein set forth is by action foreclosing such a lien.

(*a.*) The 7th section of the said act says that the collection of the rates of wharfage established by this act shall be enforced in the manner prescribed in the 207th section of the act of April 9, 1813. The laws of 1862 corrects this number by making same section 217 of act of April 9th, 1813.

(*b.*) By reference to the 217th section of that act (*Revised Laws of* 1813. *p.* 430, *vol.* 2), it is enacted that, where any ship or vessel has lain twenty-four hours at any wharf, and the master or owner refuses or neglects to pay the wharfage as aforesaid, or give satisfactory security for the payment of the same, *being thereunto required by the owner* or wharfinger, by notice in writing being left on board with the mate or one of the hands belonging to said vessel, it shall and may be lawful for the owner or wharfinger to distrain for such wharfage on any goods or chattels found on board such ship or vessel, and as from time to time, as often as twenty-four hours wharfage shall become due, and the goods and chattels so distrained to sell and dispose of in the same manner as is provided in the case of rent.

It seems to me that, taking the 7th section in combination with the 217th section of the act of April 9, 1813, the legislature did not intend to give the remedy by distress, excepting for such wharfage as is created by the 1st section of the act of April, 1860, for *vessels lying at or adjacent to a pier.* The remedy by distress, being a very summary one, and against the course of the common law, will not be given, unless clearly intended. But the 2d section of the act of 1860 gives in express language the lien.

(*c.*) Then the only other question is as to the mode of enforcing such a lien. This can only be done by action brought to satisfy such lien.

Thus in *Fox* agt. *McGregg* (11 *Barb.* 41), it was held that an innkeeper's remedy to enforce a lien, for keeping the horse of his guest, is by action in the nature of a bill in chancery. In *Edwards on Bailments* (*p.* 414), the same principle is also stated; also 2 *Kent's Com.*, 3d ed., 642.

(*d.*) There are reasons why a party should apply to a court of equity to have a foreclosure of his lien, even though he had the remedy by distress; because:

1. The remedy by distress is extraordinary. Any mistake in enforcing it renders the wharfinger a tortfeasor.

2. If the wharfinger, as a lien holder, should refuse to deliver the subject of his lien upon demand, accompanied by a tender of the debt, the lien is discharged (*Lamotte* agt. *Archer*, 4 *E. D. Smith*, 46.)

3. It is essential to an equitable lien *that the subject matter be identified.* At common law, possession is necessary, and if the possession is lost, the lien is gone. In equity, possession is not essential, but it is essential that the property or fund be distinctly traced. (*Grinnell* agt. *Suydam*, 3 *Sandf. p.* 132.)

Now, as part of these hackmatack knees have been removed, and the remainder left, it will be a nice question to determine how far and to what amount the plaintiff's lien extends, as well on the property removed as on that which remains.

(*e.*) The case of *Stearns* agt. *Marsh* (4 *Denio, p.* 227), distinctly recognizes the right by bill in equity to foreclose the pledge or lien. *Garlick* agt. *James* (12 *Johns. p.* 146) is to same effect.

(*f.*) Now, if the plaintiff should issue his distress warrant, and sell the knees without right, his lien is gone, and he is guilty of a conversion. (*Vortelyou* agt. *Lansing*, 2 *Caine's Cases*, 200; *Dyker* agt. *Allen*, 7 *Hill*, 497.)

This doctrine undoubtedly would apply if he sold to a greater extent or for a greater claim than he was entitled. He should not, therefore, be compelled to resort to a remedy of distress. The proceeding by action should be allowed, as a concurrent remedy with that of distress.

*Third.* A receivership is proper, we submit, in such a case as this.

(*a.*) The action is commenced.

(*b.*) An injunction has been obtained, restraining the defendant from interfering with the property or removing the same pending the litigation. It is necessary, therefore, to have a receiver. as one remedy is correlative with the other.

(*c.*) The plaintiff, in his papers, shows that the defendant is removing and disposing of the knees in question. Every disposition of them to a *bona fide* purchaser has an effect either to discharge or obstruct the plaintiff's lien.

Section 244 of the Code provides, in effect, in the first subdivision, that a receiver may be appointed before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially injured or impaired.

*Fourth.* On the application for a receivership, the merits are not inquired into. Such motion relates only to the preservation of the property in controversy. (4 *Wend.* 173; 2 *Barb.* 533.)

C. & T. PERRY, *for defendant, contra.*

LOTT, Justice. Motion denied, with $10 costs to abide the event. Assuming that the plaintiff is entitled to wharfage, and to a lien therefor, I am of the opinion that an action is not a proper remedy. The 7th section of chapter 254 of the laws of 1860 has reference to all the rates of wharfage established here by the act, as well as the rate fixed by section 3 as by the first section. It, as subsequently

amended, provides that the collection thereof shall be enforced in the *manner* provided in the 217th section of the act of 9th April, 1813, which is by distress of the goods and chattels found on board of the vessel, for wharfage accrued under section 1, and on the pier or bulkhead for that accrued under section 3; and it may be wherever found, but as to that I express no opinion.